### JAMES M. LONGWELL vs. LEVI R. DAY.

By the provisions of rule 79 the plaintiff is not required to make proof of the execution of certain instruments or of the hand-writing of the defendant, unless the defendant or some one in his behalf shall file and serve a copy of an affidavit denying the same. It is a substantial and sufficient compliance with this rule if the defendant file and serve a copy of an affidavit which, though not positively denying the execution of the instrument, sets up facts which if true, *necessarily* carries the same conviction to the mind as would a positive and unequivocal denial.

Where a person is induced, through fraud, to sign an entirely different instrument from what he intended, such instrument is to be treated as a forged instrument, and as creating no liability upon the signer.

If A sign a bond undertaking to discharge certain duties, or in case of default, to pay a certain sum of money, and subsequently so much of the paper as contains the conditions on which the money is to be paid is detached, without the knowledge or consent of the obligor, so as to make his undertaking to pay money to appear to be absolute, this is such an alteration as amounts to a forgery, and no recovery can be had upon such promise, even by a *bona fide* holder.

*Van Buren Circuit, Nov.*, 1870.

The alleged facts in this case sufficiently appear in the charge of the Court.

*Stevenson and Barnum and N. A. Balch,* for Plaintiff.

*Arthur Brown and G. W. Lawton,* for Defendant.

*By the Court,* BROWN, J :—

*Gentlemen of the Jury :*—The plaintiff in this action seeks to recover of the defendant upon a certain promissory note, which reads as follows :

" $200.                                        March 13th, 1869.

One year after date, I, the subscriber, of Porter Township, County of Van Buren, State of Michigan, promise to pay WEBSTER & KIMBALL, or bearer, Two Hundred Dollars——— cents, Value received, with ten per cent interest.

P. O.—Porter.                                    Levi R. Day."

The defendant has filed an affidavit setting forth what he claims were the circumstances under which he was induced to

sign the instrument. He does not deny but that the signature is his. He however claims in his affidavit and in his testimony that one Lester Holcomb came to his, defendant's residence, in Porter, about the 13th day of March, 1869, representing himself as the agent of Webster & Kimball, dealers in a certain patented machine called the "Sulky Wheel Cultivator," and as desirous of constituting the defendant an agent to introduce and sell the machines in the Township of Porter—that Holcomb required of the defendant a bond in the sum of two hundred dollars for the faithful execution of his duties as such agent; which bond, he alleges, Holcomb then and there drew up, or at least a paper which he read to the defendant purporting to be a bond, and which the defendant signed. The defendant further alleges that Holcomb gave him a power of attorney to act as such agent. He also alleges in his affidavit "that at no time before, on or after the said 13th day of March, A. D., 1869, did he write his name to or enter into any contract or obligation of the nature, tenor and effect, *knowing it to be such*, as that set forth in the said plaintiff's declaration"—that if he did sign the instrument declared upon, he so signed it supposing he was signing the bond agreed upon.

The plaintiff claims that he purchased the note before maturity, having no knowledge of the circumstances under which it was given.

The defendant insists,

1st, That he never signed the note *as such*, but that it was attached to and constituted a part of the bond executed by him to Webster & Kimball; and being a part of such instrument, it could have no validity or vitality when detached.

2d, That if not absolutely void, yet being procured by fraud and without consideration, the payee could not recover upon the note; nor can the plaintiff, who purchased the same before maturity, if he had knowledge of the alleged fraud or of facts which made it incumbent upon him to enquire into the considerations and circumstances attending the execution of the note.

The affidavit filed in the case, and to which I have already called your attention does not, perhaps, in direct terms deny the execution of the note. At least it does not allege that the

paper offered in evidence was not *signed* by the defendant; but the allegations are such as that if true, would carry conviction to the mind, that he did not sign the note *while in its present condition*, but that he signed what purported to be a bond. By provisions of Circuit Court rule number 79, the plaintiff, in a case like this, is not required to make proof of "the execution of the instrument, or the handwriting of the defendant, unless the defendant or some one in his behalf shall file and serve a copy of an affidavit denying the same." To "deny" is to contradict; to gainsay. If the defendant should say, in his affidavit, "I never executed the instrument," this would be a direct denial. Language is used to express ideas, and, when such language is used as neccessarily to carry conviction to the mind, of a given fact, it is immaterial what words are used, unless, indeed, some particular form of words are required by some rule or law. The language used in the affidavit, if true, must, I think, be taken as a denial of the execution of the note declared upon. Therefore the burden of proof rests on the plaintiff to prove its execution. In other words, the plaintiff must show, by a preponderance of evidence, that the defendant executed the note,—and by a preponderance of evidence I mean that the reasons for believing what the plaintiff claims in this respect, are more satisfactory than are the reasons for believing otherwise.

If the defendant did not execute the note nor authorize any one to do so for him, then that which purports to be a note is without vitality—is void, and being void could never create a liability against the defendant.

A promissory note is a promise to pay money, reduced to writing. A promise is an assurance or binding declaration. If therefore, a party signs a promise to pay money on certain conditions, the assurance is not binding when severed from the conditions without the consent of the promisor. While a man should be bound by his contract, he is not to be bound by any alleged agreement into which he never entered. It therefore follows that if a promissory note is, at the time of its execution attached to another instrument constituting a part of the contract it would be a material alteration to detach it and leave the note as though it had been absolute. A *bona fide* holder

is allowed to receive the genuine contract, discharged of any equities attaching to the contract itself, as between the original parties, but he cannot get a contract where none was made. In this case the plaintiff claims that he purchased the note before maturity, and it is insisted that he had no knowledge of the alleged fraudulent manner in which it was obtained. It is a rule of law that if a person executes a negotiable promissory note, knowing it to be such, and the note is transferred to a *bona fide* holder for a valid consideration, before maturity, such holder or any person holding under him may recover of the maker, notwithstanding he was induced to execute the note through fraudulent representations. Suppose, for instance, A fraudulently represents to B, that an article which he is selling to him is worth a thousand dollars, and thereby secures B's note for that amount, due in one year. The actual consideration turns out to be not worth a rush. A sells the note to D, before due, who knows nothing of the want of consideration or of circumstances which would require an honest man to make inquiry. In such a case, D would be entitled to recover from the maker. In the case referred to, B knew that he executed the note. He intended to make it. But if, through fraudulent representations, B had been induced to execute the note, supposing it was some other instrument, or if the note was attached to, and was a part of some other agreement, then the case would be different. He did not intend to make the note or to create any such liability as the note, standing alone, imports ; and such instrument would be void wherever found, and no person could recover upon it. If you should find the facts in this case to accord with this last illustration, then the plaintiff is not enti_tled to recover. If, however, you should find that the defendant executed the note in question and gave it to the agent of Webster & Kimball, with knowledge that he was executing such note, and that the conditions of the note were not affecte by some other and further stipulation as a part of the same written contract, and if you further find that the note was, before maturity, sold to the plaintiff for $100, or other valuable consideration, without notice,—such notice as I shall soon refer to—then the plaintiff is entitled to recover. A person who

executes a note knowing it to be such, even though he is indu-
ced to make such note, by fraud, is bound to pay the same to a
*bona fide* holder before due, for value.    But when an instrument
is forged, or made by one who has not the legal capacity to
contract, it is not the promise of any one, and therefore there is
no promise to enforce.    In such case the instrument is void and
no one can recover upon it.

In order to constitute a forgery, there must be the making
of a false instrument for the purpose of creating another's lia-
bility with the fraudulent intent to injure him; but such instru-
ment may be made in various ways.    It may be done by creating
the instrument entire, by adding to or taking from it some part
of its terms or conditions, or by procuring the signature of a
person to an instrument, by means of artifice and fraud, which
he had no intention of signing.    In all such cases the instru-
ment is a forged one, and no person, whether an innocent pur-
chaser or otherwise, can recover upon it.    If, therefore, you find
from the evidence in this case that the payee obtained the
defendant's signature by deceit and fraud, by falsely pretending
to read the same to him, and reading it not as a note but as
another and different contract, and the defendant was thereby
deceived and induced to sign it, the instrument is a forgery,
and the plaintiff cannot recover.

If you should believe from the evidence, that the defendant
executed the note in question, intending to deliver it to the
payees or their agent, *as a note*, whether to hold as security or
otherwise, then the plaintiff, if a *bona fide* holder before due,
for a valuable consideration, is entitled to recover, even though
the original consideration entirely failed.

A *bona fide* holder of negotiable paper is one who acquires
the paper in good faith, for a valuable consideration, from one
capable of transferring the paper, without notice of the consid-
eration or of the attending facts and circumstances.    Whatever
is sufficient to direct the attention of the purchaser of the paper
to the rights and equities of the maker and to enable him to
ascertain their nature by inquiry, is sufficient notice.    Although
notice or knowledge of defecting circumstances may not be
proved, the facts of the case may be such as to show that there

was either knowledge or an intentional and careful avoidance of knowledge. This would have the same effect in law as knowledge. 1 *Parsons on Notes and Bills*, 259. When a party having knowledge of such facts as would lead an honest man, using ordinary caution, to make further inquiries, does not make, but on the contrary studiously avoids making such inquiries, he must be taken to have notice of those facts which, if he had used such ordinary diligence he would have readily ascertained.

It is the duty of the jury to look at all the facts in the case, and to draw from them such conclusions as your experience and observation dictates to you are warranted. You may consider the fact that the body of the note is written with black ink while the signature is in red ink. You may take into consideration the fact that the note was offered and sold for half price; and you may consider the statements of the plaintiff as to the way in which he procured the note, and his subsequent statements, in determining whether he had notice of such facts as would put an honest man on inquiry. In short, Gentlemen, if the instrument is forged, that is an end of the case—the plaintiff is not entitled to recover. If the note was procured through fraud, not amounting to forgery, and knowledge of the fraud or of such facts as I have indicated, was brought home to the knowledge of the plaintiff before purchasing the note, then he must stand in the same relation to the defendant as did the original payees.

Take the case, Gentlemen, apply to the facts the rules of law I have given you, and render such a verdict as shall satisfy your consciences that you have discharged your duty faithfully and well.